# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNA URBANKSA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:09-cv-1975 (WWE) |
| | : | |
| SERGEANT CHRISTOPHER BAKER; | : | |
| POLICE OFFICER CHRISTOPHER | : | |
| BROEMS; POLICE OFFICER PETER | : | |
| MALANGA; POLICE OFFICER TROY | : | |
| STRAUSER; and NORWALK POLICE | : | |
| OFFICER GREGG SCULLY, | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION ON DEFENDANT
## SCULLY'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Anna Urbanksa[1] commenced this action asserting that defendant police officers violated her rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution as secured by 42 U.S.C. § 1983. Plaintiff also asserts common law claims for assault and battery, false imprisonment and intentional infliction of emotional distress. Now pending before the Court is defendant Gregg Scully's motion for summary judgment (Doc. #20). For the following reasons, defendant's motion will be denied.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as to the federal law claim and 28 U.S.C. § 1367 as to the state law claims.

---

[1] In the complaint caption, plaintiff's name is spelled "Anna Urbanksa." In paragraph 1 of the complaint, she spells her name "Anna Urbanska." Plaintiff should file a notice informing the Court of the correct way to spell her name. If necessary, she should also file an amended case caption.

1

**BACKGROUND**

The parties have submitted briefs, a stipulation of facts and supporting exhibits, which reflect the following factual background.

Defendant Gregg Scully has been a member of the Norwalk Police Department ("NPD") since 1999. Scully is a trained K-9 handler and had served in that capacity with the NPD from 2007 through 2009. At the time of the incident, Scully worked with Police Service Dog "Axel." The other defendants are members of the Stamford Police Department.

On February 15, 2008, members of the Stamford Police Department Narcotics and Organized Crime Unit gathered at the Stamford Police headquarters to execute a search warrant upon a residence located at 39 Sherman Street, Apartment 3, in Stamford. At approximately 2:45 p.m., defendants Officers Broems and Malanga notified defendant Sergeant Baker that they had observed a female park a green Ford Explorer in front of 39 Sherman Street. They gave notice that a black female exited the Explorer and walked to the rear of 39 Sherman Street. Approximately one minute later, she exited the front door of 39 Sherman Street and entered the driver's door of the Explorer. She drove eastbound on Sherman Street and then southbound on Lawn Avenue.

At that time, Broems notified surrounding units of the Explorer's movement and advised other officers that he had last seen the vehicle heading southbound on Lawn Avenue toward East Main Street. Approximately twenty seconds later, defendant Officer Stoebel stated that he spotted a vehicle fitting the exact description given by Broems now traveling westbound on East Main Street.

2

On that day, Scully had been assigned to work with the Narcotics Unit to allow them to use Axel in the execution of the search warrant. Defendants Scully and Strauser were informed by other officers that the Explorer had just left a residence for which there was an active search warrant. According to Scully's affidavit, Strauser stopped the vehicle; according to an incident report, "Uniformed Officer Strauser along with Norwalk Officer Scully conducted a motor vehicle stop of the Ford Explorer...." At the time of the stop, Scully was in his patrol vehicle.

After the stop, Strauser approached the car. At her deposition, plaintiff testified that she saw an officer approach her car and reach for the car door. The officer told plaintiff to get out of the car. He then took hold of plaintiff, pushed her on the side of the car and handcuffed her hands behind her back.

After Strauser addressed the driver, Scully approached the driver and told her that he would use the police dog to "monitor" the air around her vehicle. During this time, Axel remained in Scully's vehicle. Scully then removed Axel from his vehicle and conducted a search of the interior and exterior of the Explorer and did not find anything. Scully claims that he used Axel in accordance with standard procedures, starting his search at the driver's side headlight, walking Axel down the driver's side, around the back and up the passenger side to the front of the vehicle. Plaintiff testified that Axel smelled her and touched her with its nose while she remained handcuffed. She further testified that Axel was barking and being aggressive, going near her upper body and putting its nose on her legs and her buttocks. She stated that Axel's barking was so loud that she does not remember hearing any words spoken by the police at that time. Scully averred that Axel did not go near the driver, nor sniff or growl at her.

Scully further averred that Axel gave a positive identification for the presence of narcotics in the area of the front passenger door. Scully opened the door and permitted Axel to enter the vehicle. Axel indicated the presence of narcotics emanating from a backpack on the front passenger seat and from the glove compartment. Stamford officers conducted a search of the seat and glove compartment; Scully did not participate in the search.

According to the incident report, the search indicated negative results. A police recording of the incident recorded the following statements, attributed to Scully: "We ripped this car apart. The dog got hit by the airbag. We ripped the glove compartment apart and sends [unknown]. We didn't find anything." The officers, including Scully, asked plaintiff where any drugs were. She replied that she did not have any drugs.

**DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential

element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for her. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Defendant Scully moves for summary judgment on the grounds that the evidence does not support finding him liable for conducting an unlawful search and seizure of plaintiff or her vehicle.

The Fourth Amendment to the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Investigative stops fall within the Fourth Amendment's

protection from unsearchable searches and seizures. Before conducting such a stop, officers must have reasonable suspicion supported by articulable facts that a crime is about to be or has been committed. See Terry v. Ohio, 392 U.S. 1, 30 (1968). Police may not detain an individual based on a hunch, but the likelihood of criminal activity need not rise to the level required for probable cause and falls well short of a preponderance of the evidence standard. United States v. Arvizu, 534 U.S. 266, 274 (2002). Reasonable suspicion requires that the "totality of the circumstances – the whole picture – ... be taken into account." United States v. Cortez, 449 U.S. 411, 417 (1981). A Terry stop must be limited and the officer' action "must be justified at its inception, and reasonably related in scope to the circumstances which justified the interference in the first place." Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 185 (2004). The seizure may not continue for an excessive period of time and may not resemble a traditional arrest. See United States v. Place, 462 U.S. 696, 709 (1983); Dunaway v. New York, 442 U.S. 200, 212 (1979). An officer is entitled to conduct a patdown search where suspicious behavior leads the officer to suspect that the person is armed and presently dangerous. Minn. v. Dickerson, 508 U.S. 366, 373 (1993). Such a search must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry, 392 U.S. at 26.

A "canine sniff" during a permissible Terry stop does not rise to the level of a search under the Fourth Amendment. United States v. Place, 462 U.S. 696, 707 (1983). As the Supreme Court observed in Place, it is limited in the type of information obtained and in the content of information revealed. See Illinois v. Caballes, 543 U.S. 405, 408-09 (2005).

A police officer has an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers. O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where he observes or has reason to know that any constitutional violation has been committed by a law enforcement official. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

In light of this standard, the Court finds, that although Scully portrays his involvement vis-a-vis Axel as minimal, a reasonable jury could find that he failed to intervene to protect plaintiff's constitutional rights from infringement by the other officers present when they stopped plaintiff and searched her body and automobile. Because this is a motion for summary judgment as to only one defendant who it appears did not take an active role in the planning of the execution of the search or the stop of plaintiff, the Court does not have the full story before it. At this point, defendant Scully's motion for summary judgment will be denied. Should the remaining defendants file motions for summary judgment, and the Court benefits from a fuller recitation of the events of February 15, 2008, the Court will again review Scully's motion.

The Court will not address the issue of qualified immunity because it was first raised in Scully's supplemental memorandum of law in support of his motion. Even if the Court were to review it, in light of the limited factual record before the Court, the Court cannot find at this stage that qualified immunity is appropriate.

**CONCLUSION**

For the foregoing reasons, defendant Scully's motion for summary judgment

(Doc. #20) is DENIED.

Dated at Bridgeport, Connecticut, this 23rd day of February, 2011.

_____/s/_____
Warren W. Eginton
Senior United States District Judge
